UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 03-10334-GAO

UNITED STATES OF AMERICA,

v.

DAVID CHITYAL,
Defendant.

OPINION AND ORDER
December 14, 2009

O'TOOLE, D.J.

## I.   Background

The indictment in this case charged the defendant and present petitioner, David Chityal, with twenty-five counts of wire fraud and eleven counts of money laundering. Pursuant to a written plea agreement governed by Federal Rule of Criminal Procedure 11(c)(1)(B), Chityal pled guilty to two counts of wire fraud, and the government agreed to dismiss the other thirty-four counts (plus a forfeiture count). The government also agreed to dismiss a separate indictment in United States v. Chityal, No. 03-10030-JLT (D. Mass.), which charged Chityal with two counts of witness tampering by attempting to murder or procure the murder of a potential witness against him.

In the plea agreement, the parties agreed that the applicable offense level under the United States Sentencing Guidelines would be 23. Because under the Guidelines Chityal had no countable criminal history points, his criminal history fell within category I. The resulting guideline sentencing range for imprisonment was, therefore, forty-six to fifty-seven months. The government agreed to recommend a sentence at the high end of the range and further reserved

the right, should the Court calculate a lower range, to seek an upward departure to a sentence not to exceed fifty-seven months, on the ground that "the Defendant's criminal history category substantially under-represents the seriousness of the Defendant's criminal history or the likelihood that Defendant will commit other crimes."[1] (Mem. of Law in Supp. of Def.'s Am. Mot. for Relief Under 28 U.S.C. § 2255 Ex. A, ¶ 4(a).)

The plea agreement also included the following recitation:

> The sentence to be imposed upon Defendant is within the discretion of the sentencing Court, subject to the statutory maximum and mandatory minimum sentences set forth above, and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder, as modified by United States v. Booker and United States v. Fanfan, 125 S.Ct. 738, 2005 WL 50108 (January 12, 2005). In imposing the sentence, the Court must consult and take into account the United States Sentencing Guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).

(Id. ¶ 3.)

At sentencing, this Court calculated the guideline sentencing range to be that recommended by the parties, but concluded that an upward "Booker variance" was appropriate and sentenced Chityal to eighty-four months imprisonment. The sentence was affirmed on direct appeal. United States v. Chityal, No. 07-1721, slip op. (1st Cir. Feb. 5, 2008). Chityal has now moved to vacate his sentence under 28 U.S.C. § 2255, asserting a number of supporting grounds.

## II.   Ground I: Ineffective Assistance of Counsel

As Ground I, Chityal argues that his trial and appellate lawyers rendered ineffective assistance in violation of the Sixth Amendment to the United States Constitution. An ineffective assistance of counsel claim requires the petitioner to show that his counsel's performance "fell below an objective standard of reasonableness" and that counsel's performance probably resulted in prejudice to the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Prejudice

---

[1] Chityal had Canadian convictions that were not counted under the Guidelines.

2

exists when "there is reasonable probability that, but for counsel's . . . errors, the results of the proceeding would have been different." Id. at 694. It is not enough to show that counsel's errors had "some conceivable effect on the outcome," but rather it must be shown that counsel's errors "undermine confidence in the outcome." Gonzalez-Soberal v. United States, 244 F.3d 273, 277 (1st Cir. 2001).

    A.    Non-Binding Plea Agreement

Chityal argues that his trial counsel rendered ineffective assistance by improperly advising him to accept a plea agreement that did not require the Court to impose the term of imprisonment agreed to by the parties. See Fed. R. Crim. P. 11(c)(1)(B), (C).

Chityal does not argue that he did not understand that the Court could impose a sentence different from—and higher than—the parties' recommendations and that his plea was thus involuntary. In light of the clear statement in the plea agreement recited above and of Chityal's own acknowledgements at the plea colloquy,[2] he could not make such an argument. Rather, his

---

[2] The plea colloquy included the following exchange:

> THE COURT: . . . The plea agreement sets out the parties' view as to how the guidelines range ought to be determined and then suggests that the sentence ought to be within that range. Those are legitimate recommendations. They're rather common recommendations from the parties. I just want to be sure you understand that they're not binding on the court. I may take a different view of what the guidelines recommend; and having determined that, I may decide that the sentence should not be within the guideline range for whatever reason. Again, all of those things are going to depend on considerations that I have not yet had occasion to deliberate on.
>
>     The government, of course, is committed to those positions that it has agreed with you about, and that will be the government's recommendation. But the government's recommendation does not restrict the independence of the court's judgment with respect to sentencing. Do you understand that?
>
> MR. CHITYAL: I do.

(Mem. of Law in Supp. of Def.'s Am. Mot. for Relief Under 28 U.S.C. § 2255 Ex. F, 14-15.)

He also acknowledged that the decision to plead guilty was his own decision:

3

argument is that his lawyer denied him effective assistance in the constitutional sense by advising him to enter into the plea agreement and to plead guilty without a guarantee that the Court would not impose a sentence higher than the one recommended by the government.

The argument is, not to put too fine a point on it, preposterous. Chityal points to no specific error of omission or commission on the part of his lawyer other than his advising Chityal to accept the plea agreement. There is no claim, as in United States v. Colon-Torres, 382 F.3d 76, 86 (1st Cir. 2004), that counsel failed to investigate or discover facts that might have led him to give different advice. That case, cited by Chityal, is therefore inapposite.

Nor can Chityal point to any circumstances that should have put his lawyer on notice that an above-guideline sentence was so likely that something more than advocacy at the sentencing hearing was needed to stave off such an outcome. There was certainly no indication at the plea colloquy that the Court was contemplating an above-guideline sentence. To the contrary, the Court took care to be sure the defendant knew the Court had, at that point, given no consideration to what the sentence might be.[3]

---

[3] At the plea colloquy, the Court said:

>    THE COURT: . . . Has anyone tried to pressure you or push you into pleading against your will?
>
>    MR. CHITYAL: No.
>
>    THE COURT: Is your decision to plead guilty your own personal decision?
>
>    MR. CHITYAL: That of mine and my family.
>
>    THE COURT: You're not doing it because your family wants you to but that you've decided --
>
>    MR. CHITYAL: No. Ultimately, I have the final decision, sir.

(Id. at 18-19.)

The only specific assertion Chityal now makes is that he would not have pled guilty, but rather would have gone to trial, if his lawyer had not advised him to enter into the plea agreement. That is a rather unremarkable assertion. It is probably true for close to 100% of defendants who plead guilty that they decided to do so on the advice of counsel. The proposition says absolutely nothing about why the giving of such advice should be considered to amount to representation that "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.

Nor was there any more generalized reason why Chityal's counsel should have anticipated that the likelihood of an above-guideline sentence was substantial enough that advising the defendant to enter a plea agreement without protection against that possibility was a

---

> If I accept your plea to these two counts this afternoon and find you guilty, we will set a date for sentencing sometime in the future, probably about three months from now. That's the usual time frame.
>
> Between now and then, the Probation Office will do an investigation and write a report, called a Presentence Report. You'll see a draft form of that before it's ready for submission to the court, as will the government, and you'll have an opportunity to comment on it and make any suggestions about changing or improving it that you think need to be made. Ultimately, there will be a final form of the Presentence Report that will be available and will be considered by me when it comes time to decide on a sentence.
>
> At the time of sentencing, I may also have anything that you or your lawyer decide to present on the question. I'll have whatever the government chooses to present on the question and maybe, potentially, even if there are victims, I may hear from victims as to what they think about the sentence. As of today, I have none of those things, and I have considered none of those things. *So it is not possible for me to give you any particular idea of what the sentence is likely to be because I have no idea. And I have no idea because I've not considered any of the things that I will ultimately consider in determining that.*
>
> As a consequence, as you plead guilty this afternoon, you don't know what the sentence is going to be, and so there is some uncertainty – and perhaps you can see it as a risk -- in pleading guilty without knowing what the final answer will be in terms of sentence.

(Mem. of Law in Supp. of Def.'s Am. Mot. for Relief Under 28 U.S.C. § 2255 Ex. F, 11-12) (emphasis added).

defalcation in professional responsibility. At the time of Chityal's sentencing above-guideline sentences were (and still are today) decidedly uncommon in this District. Chityal was sentenced April 4, 2007. The percentage of above-guideline sentences imposed in this District was 1.2% and 1.5%, respectively during fiscal years 2006 and 2007 (covering the period from October 1, 2005 through September 30, 2007). In contrast, within-guideline sentences accounted for 57.2% and 54.9%, respectively, of all sentences imposed in this District during fiscal years 2006 and 2007. See U.S. Sentencing Comm'n, Statistical Information Packet, Fiscal Year 2007, District of Massachusetts 11 tbl. 8, http://www.ussc.gov/JUDPACK/2007/ma07.pdf (2007); U.S. Sentencing Comm'n, Statistical Information Packet, Fiscal Year 2006, District of Massachusetts 11 tbl. 8, http://www.ussc.gov/JUDPACK/2006/ma06.pdf (2006). While there was clearly some risk of a higher-than-anticipated sentence—a risk that Chityal's attention was drawn to during the plea colloquy—it was not so significant that it can be said that it was unreasonable for counsel not to have concentrated on minimizing that risk to the exclusion of all other considerations—such as minimizing the number of counts of conviction, avoiding vivid testimony by victims, gaining the leverage of the government's advocacy for a sentence that could be seen as moderate in light of all the circumstances, and so on—in determining whether to advise Chityal to enter into the plea agreement.

Chityal's argument amounts to a claim that counsel renders ineffective assistance whenever he advises his client to enter a so-called "B" plea (referring to Federal Rule of Criminal Procedure 11(c)(1)(B)), because it is always possible, in such a case, that the sentence imposed may be greater than the government has agreed to recommend. The corollary of such an argument is that the only choice constitutionally competent counsel can present to his client is to get the government to agree to a so-called "C" plea (referring to Federal Rule of Criminal

Procedure 11(c)(1)(C)) or to go to trial.[4] Besides implying that Rule 11 itself induces a kind of *per se* violation of the Sixth Amendment by authorizing "B" pleas, the suggestion substitutes a simplistic standard of judgment for the more complex standard counseled by Strickland. See 466 U.S. at 688 ("In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."). It is a wholly meritless argument.

In any event, even if the advice to enter a "B" plea *simpliciter* were to be seen as falling below an objective standard of reasonableness, Chityal would still have to show that an alternate course would likely have resulted in a better outcome for him. See id. at 692. One possible better outcome would have been a "C" plea agreement with a sentence capped somewhere below the sentence actually imposed, but the petitioner would have to show that the government would have assented to such an agreement.[5] The fact that it *did* not in this case suggests that it *would* not, but in any case, the petitioner presents nothing from which it could be concluded that a better deal was at hand but not pursued by his counsel. In the absence of a more favorable agreement, the only other alternative—the one Chityal now says he would have taken—would be to go to trial. To show prejudice under Strickland, he would have to show either (a) that he would likely have been acquitted on all thirty-six counts of the indictment and thus faced no sentence at all or (b) that though he would likely have been convicted on some counts, the Court, having heard the full details of the case in an extended trial, probably would have imposed a

---

[4] Presumably, on the petitioner's theory, advising a defendant to plead "straight up" to a criminal charge—that is, without a plea agreement—would similarly constitute be ineffective assistance, because there would be no upper limit, other than the statutory maximum, to the sentence that could be imposed.

[5] Even if the government agreed to a "C" plea with a recommendation within the guideline sentencing range, the Court would still have to accept the parties' agreement. Chityal offers no reason to think that the Court probably would have accepted such an agreement.

sentence less than the one actually imposed after the guilty plea.[6] He offers nothing that would permit the Court to make that probability judgment in his favor.

> B.      Failure to Object to Upward Departure or to Seek a Continuance

Chityal next contends that trial counsel was ineffective because he failed to object or seek a continuance when the Court announced it was considering an upward departure based on Chityal's prior Canadian offenses.

While counsel may never have said the words "I object," as if he were seeking to enforce a rule of evidence, he made a forceful argument in favor of a sentence of forty-six months, both in his sentencing memorandum and at sentencing, contending that imprisonment for forty-six months was sufficient, but not greater than necessary, to achieve the sentencing goals outlined in 18 U.S.C. § 3553(a).[7] (See Sentencing Hr'g Tr. 12-13, Apr. 4, 2007.) That affirmative argument was, in substance, an objection to a higher sentence. Nothing of substance would have been added if he had also said, "And I object to a higher sentence."

Counsel was far from unprepared for the sentencing hearing, and there is no reason to think that a continuance would have facilitated a more successful outcome. The difference between the parties' recommendations and the Court's sentence did not come about because the Court had inadequate information about the relevant considerations, so that a continuance to assemble additional relevant information might have been helpful, but rather because the Court

---

[6] If Chityal had been convicted after trial, the guideline sentencing range would have been higher because his offense level would not have been reduced three levels for acceptance of responsibility. Assuming no other changes, his base offense level would have been 26, which would have yielded a guideline sentencing range of sixty-three to seventy-eighty months. See U.S. Sentencing Guideline Manual § 3E1.1 & Sentencing Table (2006). While that range is lower than the sentence actually imposed, like the lower range computed after his plea, it also does not account for Chityal's Canadian convictions, which were an important factor in the Court's decision to impose an above-guideline sentence.

[7] In particular, counsel made one of the same arguments Chityal now raises on the present motion: that the government had accounted for his prior Canadian convictions in negotiating the guideline range reflected in the plea agreement.

8

evaluated the commonly known information differently than the parties. It was the Court's judgment that a sentence within the guideline range was not sufficient, and that a higher sentence was necessary, to satisfy the statutory sentencing goals, particularly the goals of "provid[ing] just punishment for the offense" and "protect[ing] the public from further crimes of the defendant." See 18 U.S.C. § 3553(a)(2)(A), (C); see also Chityal, No. 07-1721, slip op. at 2 (noting that "the district court indicated that the sentence was warranted on considerations of retribution and deterrence"). There is no reason to believe it probable that Chityal's sentence would have been different if counsel had asked for a continuance.

### C. Failure to Object to the Government's Presentation

Chityal further claims that trial counsel was ineffective in failing to object to the government's suggestion that there was a danger that Chityal would victimize others and that his sentence needed to send a message to the Canadian telemarketing industry. Chityal contends that in making these arguments the government was violating its promise not to seek a sentence above the high end of the guideline range.

The short answer to this claim is that the government did not breach the plea agreement by its argument. See infra section II. Failure to object to a non-violation is, therefore, insignificant.

### D. Failure to Present Humanizing Evidence

Chityal next argues that trial counsel failed to present "humanizing evidence" about him—specifically information about his troubled childhood and testimony about his character and personal history from his sister. Both Chityal and his sister submitted affidavits outlining the information they would have introduced. (Mem. of Law in Supp. of Def.'s Am. Mot. for Relief Under 28 U.S.C. § 2255 Exs. B [hereinafter Chityal Aff.], D [hereinafter Monica Aff.].)

Humanizing evidence can sometimes be used to offset the government's portrayal of the defendant as a hardened criminal. See Guzman v. United States, No. 98-12086, 2004 WL 3710110, at *21 (D. Mass. June 4, 2004). Or it can be used to show that the defendant's "moral sense was warped by abuse, drugs, mental incapacity, or disease or who acted out of passion, anger or other motive unlikely to reoccur." Allen v. Woodford, 395 F.3d 979, 1007 (9th Cir. 2005). Prejudice might flow from the failure to introduce such evidence if there is a reasonable probability that the information would have prompted a lower sentence. See Guzman, No. 98-12086, 2004 WL 3710110, at *21.

Chityal's sentencing did not lack "humanizing evidence." Counsel presented substantial information about Chityal's background in his sentencing memorandum and at sentencing. (Def.'s Sentencing Mem. 1-2; Sentencing Hr'g Tr. 18-19.) Counsel also submitted letters attesting to Chityal's character from his step-father, fiancée, fiancée's mother, and former father-in-law and employer. (Def.'s Sentencing Mem. Exs. A, B, & F.) Even if more could have been presented, it would have increased the quantity but not necessarily the quality of favorable evidence. Counsel's performance could not be considered objectively unreasonable in this respect.

Moreover, Chityal has not shown that he likely would have received a lower sentence if the new information about his troubled childhood had been presented either in addition to or in substitution for the proffered information. A good deal of the information Chityal now says his counsel should have introduced is contradicted by his own statements to the Probation Office, as reported in his Presentence Report ("PSR"). (Compare Chityal Aff. ¶ 7(b) ("My father abused me."), and Monica Aff. ¶ 6 ("I planned to tell the court that my father abused David . . . ."), with PSR ¶ 57 ("He denies experiencing any form of abuse as a youth . . . .")); (compare Chityal Aff.

10

¶ 7(c) ("As a child, I played the role of standing up to my abusive father in an attempt to keep him from harming other people in my family."), and Monica Aff. ¶ 6 ("I planned to tell the court . . . that David protected me from our father . . . ."), with PSR ¶ 76 ("[T]he defendant firmly denies experiencing or witnessing any abusive behavior in his family.")); (compare Chityal Aff. ¶ 7(d) ("I had left home by the time I was fifteen years old."), with PSR ¶ 63 ("He reports that he lived in the family household until he was eighteen, at which time he moved to an apartment.").) Some of the new information is also inconsistent with his sister's affidavit. (Compare Chityal Aff. ¶ 7(e) ("I was responsible for supporting both my mother and thirteen year old sister by the time I was seventeen years old."), with Monica Aff. ¶ 6 ("[H]e supported me from the time I was about fifteen years old on.").)

Highlighting such contradictory statements would more likely have reinforced this Court's assessment of Chityal as "clever," "conniving," and "entirely self-referential" than have led to the Court's taking of a more benign view. (See Sentencing Hr'g Tr. 23-24.) Chityal has not shown any prejudice from the omission of the new information.

E.   Remaining Claims of Ineffective Assistance of Counsel

The remaining ineffective assistance of counsel claims can be summarily rejected. See United States v. Butt, 731 F.2d 75, 77 (1st Cir. 1984) ("Facially inadequate § 2255 claims may be summarily denied when the record conclusively contradicts them.").

Chityal contends that trial counsel rendered ineffective assistance by failing to present details relating to the harsh conditions he endured during pre-trial detention. This argument is belied by the record; counsel raised this precise argument in his sentencing memorandum. (See Def.'s Sentencing Mem. 4-6) (emphasizing Chityal's confinement in the "equivalent of a United States maximum security prison" during his pre-trial detention in Canada and the emotional

strain caused by his geographical separation from his family and friends during his pre-trial detention in the United States). Portions of this argument were repeated at sentencing. (See Sentencing Hr'g Tr. 15.) Chityal does not identify any other details which should have been, but were not, presented at sentencing.

Chityal also asserts that trial counsel rendered ineffective assistance by failing to argue he was entitled to a two-for-one credit for his Canadian pre-trial detention. Again, this claim is contradicted by the record. Counsel made this argument both in his sentencing memorandum, (Def.'s Sentencing Mem. 5), and at sentencing, (Sentencing Hr'g Tr. 15-16). He supported his argument with letters from a Canadian attorney and consular officer explaining the two-for-one credit, as well as copies of cases from the Supreme Court of Canada. (Def.'s Sentencing Mem. Ex. D.)

In passing, Chityal suggests that his appellate counsel rendered ineffective assistance by not raising this detention credit argument on direct appeal. Even had the argument been raised, Chityal would not have gained anything. Because sentencing courts are not authorized to calculate the credit given for pre-trial detention, United States v. Wilson, 503 U.S. 329, 334 (1992) ("[W]e conclude that § 3585(b) does not authorize a district court to compute the credit at sentencing."), the First Circuit could not have concluded that this Court erred in failing to do something it was not authorized to do.

All claims of ineffective assistance of counsel lack merit.

**III.    Ground Two: Breach of the Plea Agreement**

As Ground II, Chityal alleges that the government breached the plea agreement by emphasizing factors that could support an upward departure and de-emphasizing factors that could support a sentence within the advisory guideline range, effectively urging an above-guideline sentence while giving mere lip service to its agreed recommendation. On direct appeal, the First Circuit resolved this issue adversely to the petitioner. Chityal, No. 07-1721, slip op. at 3. Ordinarily, an issue resolved on direct appeal cannot be relitigated by means of a § 2255 motion. United States v. Michaud, 901 F.2d 5, 6 (1st Cir. 1990).

Chityal urges, however, that because there was no contemporaneous objection to the government's argument, the circuit court reviewed the issue under a "plain error" standard, a more stringent standard for an appellant to satisfy, rather than under a plenary *de novo* review, and therefore, the issue remains open for reconsideration on the present motion.

Assuming in his favor that the issue is open, Chityal's argument for a different conclusion is unpersuasive. It is true that the government's argument touched on a number of factors about the offense and about the defendant that would support greater, rather than lesser, punishment. There was a reason for that entirely consistent with the government's obligation under the plea agreement. As noted in the agreement, the government was seeking a sentence at the high end of the guideline range. In other words, the government was advocating for the highest possible guideline sentence. As a practical matter, such an argument ordinarily must be made with some vigor because it is a common enough fact to be judicially noticed that, in this District, guideline sentences are often at the low end and rarely at the high end of the guideline range. The government had a practical burden of persuasion in recommending a high end sentence.

While the Court had raised the question of an above-range sentence, it had not made a definitive determination. The government was entitled to make a strong argument for a high end sentence in order to meet the defendant's argument that the sentence should be at the low end of the range. The government stood by its promise made in the plea agreement and asked the Court to impose a sentence of fifty-seven months. The government did not breach its obligation under the plea agreement.

## IV. Ground Three: Failure to Grant Two-for-One Credit for Canadian Pre-Trial Detention

As Ground III, Chityal contends that the Court and the Bureau of Prisons ("BOP") erroneously failed to grant him a two-for-one credit for the portion of his pre-trial detention spent in Canadian custody. The Court lacks jurisdiction to consider this claim.[8] Only the BOP, and not the sentencing court, has the authority to determine the credit given for pre-trial detention. Wilson, 503 U.S. at 334. Furthermore, any challenge to the BOP's calculation of this credit could only be raised under 28 U.S.C. § 2241. Rogers v. United States, 180 F.3d 349, 358 (1st Cir. 1999). Chityal did, in fact, file a § 2241 petition in the Western District of Pennsylvania. That court held that Chityal was "not entitled to the sentencing credit that he seeks" because "[h]e was not convicted and sentenced under Canadian law and therefore that nation's laws do not apply to him." Chityal v. Marberry, No. 07-254, 2009 WL 3241852, at *3 (W.D. Pa. Oct. 5, 2009).

---

[8] Chityal asserts that a miscalculation of a sentence may be cognizable under § 2255. See Knight v. United States, 37 F.3d 769, 773 (1st Cir. 1994). Even so, he does not argue that the Court miscalculated his sentence. He argues only that the Court failed to give sufficient credit for the time spent in pre-trial detention. To the extent the argument is that the Court should have reduced the sentence imposed enough to give effective credit to the extent he requested, it is merely an argument about a discretionary judgment; it is not an argument that the sentence was unlawful.

## **V.** **Conclusion**

For the foregoing reasons, the petitioner's Amended Motion to Vacate Under 28 U.S.C. § 2255 (dkt. no. 59) is DENIED. Additionally, the petitioner's *pro se* Motions to Vacate Under 28 U.S.C. § 2255 (dkt. nos. 52 & 57) are MOOT. All other pending motions (dkt. nos. 72 & 77) are DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge